**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JOSEPHINE GRIMM and )
LESTER GRIMM, )
                 )
      Plaintiffs, )
                 )
        v. )      02: 08cv0828
                 )
WASHINGTON MUTUAL BANK, )
                 )
      Defendant. )

**MEMORANDUM OPINION AND ORDER**

Presently pending before the Court for disposition is the MOTION TO DISMISS

PLAINTIFFS' AMENDED COMPLAINT, with brief in support, filed by Defendant,

Washington Mutual Bank ("WaMu") (*Document Nos. 4 and 5*, respectively) and the response

and brief in opposition filed by Plaintiffs, Josephine Grimm and Lester Grimm (*Document Nos.*

*7 and 8*).

Plaintiffs allege that they were the victims of identity theft premised on certain

unauthorized charges made on their WaMu credit cards, as well as the cards of thirteen other

banks or credit card companies. *See* Amended Complaint, ¶¶ 7 -10. Plaintiffs allege that at

least three unauthorized charges were made on their WaMu credit cards between October 17,

2005 and October 18, 2005, totaling $1,000.00.[1] Plaintiffs contend that WaMu created a false

impression of security by, *inter alia*, promising that their WaMu account would be protected

against unauthorized transactions and in the event that an unauthorized transaction would

occur, the Grimms would not be held liable. However, according to Plaintiffs, WaMu failed to

---

[1]      In Paragraph 5 of their Amended Complaint, Plaintiffs state that they held at least
two (2) credit card accounts with WaMu.

detect that the Grimms' account had been "raided," that fraudulent transactions had occurred and that WaMu continues to hold them liable for the unauthorized use of their credit cards.

After careful review of the filings, the Motion to Dismiss will be granted in part and denied in part.

## Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the Complaint. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S.Ct. 1955, 1965 (2007) (citing *Papasan v. Allian,* 478 U.S. 265, 286 (1986)).

To make certain that lower courts understood the scope of its holding, the Supreme Court in *Twombly* explicitly rejected its earlier decision in *Conley v. Gibson*, 355 U.S. 41, 47 (1957), which had held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S.Ct. at 1969. Rather, the Court made clear that a plaintiff's complaint must go beyond mere legal conclusions and speculation to provide factual allegations sufficient to "nudge . . . their claims across the line from conceivable to plausible." *Id.* In *Phillips,* the Court of Appeals for the Third Circuit addressed in detail the modifications to the standard of review for motions filed pursuant Rule 12(b)(6). *See Phillips v. County of Allegheny*, 515 F.3d 224, 230-235 (3d Cir. 2008).

In April 2008, our court of appeals summarized its current application of *Twombly* and *Phillips.  See Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315 (3d Cir. 2008). The  court noted that when it had decided *Phillips*,

> [a]lthough the exact parameters of the *Twombly* decision were not yet known, we read *Twombly* to mean that 'factual allegations must be enough to raise a right to relief above the speculative level.  In other words, 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.

*Wilkerson*, 522 F.3d 322 (citing *Phillips,* 515 F.3d at 234*, quoting Twombly*, 127 S. Ct. at 1965).

"After *Twombly*, it is no longer sufficient to allege mere elements of a cause of action; instead, 'a complaint must allege facts suggestive of [the proscribed] conduct.' " *Phillips*, 515 F.3d at 233 (*quoting Twombly*, 127 S. Ct. at 1969 n.8.)  "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element."  *Id.* at 234 (*quoting Twombly*, 127 S. Ct. at 1965).

However, nothing in *Philips* or *Twombly* has changed other pleading standards for a Rule 12(b)(6) motion to dismiss.  That is, in *Phillips* the court of appeals noted that the Supreme Court in *Twombly* did not impose a new heightened pleading requirement, but reaffirmed that Federal Rule of Civil Procedure 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief, not "detailed factual allegations." *See Phillips,* 515 F.3d at 231 (citing *Twombly,* 127 S. ct. at 1964).  Second, the Supreme Court did not abolish the Rule 12(b)6) requirement that "the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove

those facts or will ultimately prevail on the merits." *Phillips, id.*, (*citing Twombly, id.* at 1964-65 and 1969 n.8.) *Phillips* also noted that while the Supreme Court did not address the previously established rule about drawing all reasonable inferences in favor of the non-moving party when considering a motion to dismiss, it concluded "we do not read [the *Twombly*] decision to undermine that principle." *Id.* at 231.

## Discussion

WaMu raises several arguments in support of its Motion to Dismiss, which will be will be addressed seriatim.

I.      ***Gist of the Action Doctrine***.[2]

WaMu argues that the "gist of the action doctrine" bars Plaintiffs' claims for negligence (Count II), fraudulent misrepresentation (Count III), negligent misrepresentation (Count IV) and negligence per se (Count VIII) (" the tort claims").

The gist of the action doctrine bars tort claims which arise solely from a contract between the parties. *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680 n. 8 (3d Cir. 2002)

---

[2]      Although the Pennsylvania Supreme Court has never adopted the gist of the action doctrine, the Pennsylvania Superior Court and the Court of Appeals for the Third Circuit, as well as a number of United States District Courts, have predicted that it would. *Williams v. Hilton Group PLC*, 93 Fed. Appx. 384, 385 (3d Cir. 2004); e*toll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002); *Air Products and Chemicals, Inc. v. Eaton Metal Products Co.*, 256 F. Supp. 2d 329 (E. D. Pa. 2003); *Caudill Seed and Warehouse Co., Inc. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826, 833 n. 11 (E. D. Pa. 2000).

Plaintiffs apparently concede that the gist of the action doctrine is Pennsylvania law, and, this Court too, predicts that the Pennsylvania Supreme Court would adopt it.

(*citing Phico Insurance Co. v. Presbyterian Medical Services Corp.*, 663 A.2d 753, 757 (Pa. Super. 1995)). The doctrine is based on the notion that the "important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus." *Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 103-04 (3d Cir. 2001) (quoting *Redevelopment Auth. of Cambria County v. International Ins. Co.*, 685 A.2d 581, 590 (Pa. Super. 1996)), *cert. denied*, *Ellwood City Forge Co. v. Bohler-Uddeholm America, Inc.*, 534 U.S. 1162 (2002); *see also* e*toll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002).

Many courts have struggled with whether the "gist of the action" doctrine applies to fraud cases. *See etoll*, 811 A.2d 10. In determining whether the "gist of the action" doctrine applies, a court must determine whether the source of the duties breached were "intertwined" with obligations under the contract, or if they were merely collateral. *Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp.2d 644, 651 (W.D. Pa. 1999). The court in *eToll* explained the sometimes blurred distinction: "Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals." *eToll*, 811 A.2d at 14 (additional citation omitted)).

Here, Plaintiffs argue, without citing any authority in support of their position, that the gist of the action doctrine does not apply to its tort claims because "[a] credit card agreement is a contract of adhesion and, by definition, a contract of adhesion does not contain any duties imposed by mutual consent." Additionally, Plaintiffs argue that WaMu "had a duty

to truthfully represent the nature and scope of its services and to avoid engaging in fraudulent and/or deceptive conduct creating a likelihood of confusion or misunderstanding." Ps' Brief at 3.

While it is true that the gist of the action doctrine will not bar all fraud in the inducement claims, "the particular theory of fraud-whether it lies in inducement or performance-is not dispositive." *Guy Chemical Co., Inc. v. Romaco N.V*, 2007 WL 184782 (W.D. Pa. Jan 22, 2007) at *5-6; *See also Owen J. Roberts Sch. Dist. v. HTE, Inc.*, 2003 WL 735098 n. 4 (E.D. Pa. Feb.28, 2003) (applying the gist of the action doctrine to a fraud in the inducement claim where the pre-contractual statements regarding ability to supply software in a timely manner were ultimately addressed in the contract); *Galdieri v. Monsanto Co.,* 245 F. Supp.2d 636, 650 (E.D. Pa. 2002) (dismissing the plaintiff's fraudulent inducement claim under the gist of the action doctrine where the alleged fraud was that the defendant never intended to perform). Rather, the test to be applied to claims of fraud in the inducement remains the same as that set forth in *eToll*. *Id.*

A tort claim is barred by the gist of the action doctrine if: (1) it arises solely from a contract between the parties; (2) the duties allegedly breached were created and grounded in the contract itself; (3) the liability stems from a contract; or (4) the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract. *Williams v. Hilton Group, PLC*, 261 F. Supp.2d 324, 327-28 (E.D. Pa. 2003) (*citing eToll*, 811 A.2d at 19)).

The Court acknowledges that it must exercise caution in making a determination regarding the gist of the action at this early stage of the case. *See Weber Display and*

*Packaging v. Providence Washington Insurance Co.*, 2003 WL 329141 (E.D. Pa. Feb.10, 2003). However, the Court finds that it is patently evident from a review of the Amended Complaint that Plaintiffs' tort claims are based in contract.

The claims and allegations made by Plaintiffs against WaMu are all grounded in their Account Agreement with WaMu. Specifically, their Amended Complaint avers, *inter alia:*

(i)    Upon opening the WaMu Credit Cards, the Grimms entered into a contract with WaMu. Amended Complaint, ¶ 14;

(ii)    At all times pertinent thereto, the Grimms put their full faith and trust in WaMu to act in compliance with the terms and conditions of the Contract. Amended Complaint, ¶ 17;

(iii)    WaMu breached its contractual duties and obligations when it failed to protect the Grimms from fraudulent charges on the WaMu Credit Cards and then failed to accept liability for the fraudulent charges; Amended Complaint, ¶ 18; and

(iv)    As a sole, direct, proximate and legal cause of WaMu's breach of contract, the Grimms have sustained severe, serious, and irreparable harm. Amended Complaint, ¶ 19.

The Court finds and rules that Plaintiffs' tort claims are "inextricably intertwined" with the alleged failure of WaMu to perform its obligations under the terms of the contract, i.e., the Account Agreement. The Court cannot find the contract to be merely collateral, but rather finds that the contract is at the heart of the various tort claims. Accordingly, the Court finds and rules that Plaintiffs' claims for negligence (Count II), fraudulent misrepresentation (Count

III), negligent misrepresentation (Count IV) and negligence per se (Count VIII) are barred by the gist of the action doctrine.[3]

II.       ***Economic Loss Doctrine***[4]

In the alternative, WaMu argues that Plaintiffs' claims for negligence (Count II), negligent misrepresentation (Count IV), and negligence per se (Count VIII) must be dismissed based upon the Economic Loss Doctrine.

Under Pennsylvania law, the Economic Loss Doctrine precludes recovery for economic losses in tort actions where the party seeking recovery has suffered no physical or property damage. *Spivack v. Berks Ridge Corp*., 586 A.2d 402, 405 (1991).  However, the Court of Appeals for the Third Circuit has described the "economic loss doctrine" as "prohibit[ing] plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Bohler-Uddeholm*, 247 F.3d  at 104 (*quoting Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995)).  In *Bohler-Uddeholm*, the appellate court explained that the Economic Loss Doctrine originated in the context of courts precluding products liability tort claims in cases where one party contracts for a product from another party and the product malfunctions, injuring only the product itself. 247 F.3d at 104 n.

---

[3]       Because the Court has ruled that the gist of the action doctrine precludes Plaintiffs' claim for fraudulent misrepresentation, it is not necessary for the Court to address WaMu's additional argument that this claim should be dismissed for failure to plead with specificity as required by Federal Rule of Civil Procedure 9(b).

[4]       Again, similar to the gist of the action doctrine, the Pennsylvania Supreme Court has never adopted the economic loss doctrine.  However, based on lower Pennsylvania court decisions supporting the economic loss doctrine, our appellate court has predicted that the Pennsylvania Supreme Court would apply the doctrine in certain situations.  *King v. Hilton-Davis*, 855 F.2d 1047, 1053-54 (3d Cir. 1988).

11 (*citing East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 866-71 (1986)). As a result, although the appellate court determined that both the Economic Loss Doctrine and the Gist of the Action Doctrine are applicable to tort actions that inappropriately stem from contract liability, the Gist of the Action test "is a better fit" for non-products liability cases. *Id*.

This Court finds the reasoning of the Court of Appeals to be persuasive. As a result, the Court will decline to dismiss Plaintiffs' claims for negligence (Count II), negligent misrepresentation (Count IV), and negligence per se (Count VIII) by operation of the Economic Loss Doctrine, especially in light of the fact that the Court has found that the gist of the action doctrine bars these claims.

## III.        *Claim for Breach of Fiduciary Duty (Count V)*

WaMu contends that Plaintiff cannot establish that a fiduciary relationship existed because "Pennsylvania law follows the well recognized principle that a lender is not a fiduciary of the borrower." D's Br. at 11 (*quoting Smith v. Berg,* 2000 U.S. Dist. LEXIS 4513 (E.D. Pa. Apr. 10, 2000)) (additional citations omitted). According to WaMu, the relationship between the Plaintiffs and WaMu "simply is one of debtor and creditor: In short, Plaintiffs allege only a typical credit relationship, and nothing more. As a matter of law, WaMu owed no fiduciary duty to Plaintiffs as a creditor." Id. at 11.

Plaintiffs respond that WaMu's argument is not correct for two reasons: (i) WaMu is not a lender and (ii) "there is a confidential relationship between the Grimms and WaMu" which establishes a fiduciary relationship. However, Plaintiffs have failed to plead any factual allegations which would establish a fiduciary duty running from WaMut to them.

Under Pennsylvania law, a fiduciary duty exists when there is a "special relationship" which is one "involving confidentiality, the repose of special trust or fiduciary responsibilities." *eToll*, 811 A.2d at 22. Furthermore, "it generally involves a situation where by virtue of the respective strength and weakness of the parties, one has the power to take advantage of or exercise undue influence over the other." *Id.* No such relationship exists in this case. The Court finds that the parties have simply entered into a commercial, arms-length contract with one another and that this is not sufficient to create a fiduciary relationship. If the Court were to rule that the contract in the instant case created a fiduciary duty, every alleged breach of contract would necessarily involve an alleged breach of fiduciary duty. *Id.* (stating that "[i]f parties to routine arms length commercial contracts for the provision of needed goods or services were held to have a 'special relationship,' virtually every breach of such a contract would support a tort claim.). Therefore, Plaintiffs' claim for breach of fiduciary duty fails as a matter of law and Count V of the Amended Complaint will be dismissed.

IV.     ***Claim Brought Pursuant to the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law (Count VI)***

Plaintiffs contend that WaMu violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") when it engaged in a pattern of unfair practices by guaranteeing fraud protection in the context of the cardholder agreement and by failing to provide such protection. *See* Amended Complaint, ¶ 52. WaMu argues that Count VI should be dismissed because Plaintiffs have failed to allege the common law elements of fraud. The Court finds this argument to be without merit.

"The general purpose of the UTPCPL is to protect the public from fraud and unfair deceptive business practices." *Burke v. Yingling*, 666 A.2d 288, 291 (Pa. Super. 1995). Moreover, the UPTCPL "is to be liberally construed in order to effectuate its purpose." *Keller v. Volkswagen of America, Inc*., 733 A.2d 642, 646 (Pa. Super. Ct. 1999). A plaintiff seeking to recover under the UTPCPL once was required to prove all the elements of common law fraud; however, a 1996 amendment made the law "less restrictive."[5] *Commonwealth v. Percudani*, 825 A.2d 743, 747 (Pa. Commw. 2003).

The Court notes that Pennsylvania courts are divided as to the import of the 1996 amendment to the UTPCPL: the Superior Court continues to require plaintiffs under the UTPCPL to prove all the elements of common law fraud whereas the Commonwealth Court has abandoned that requirement. *See Com. ex rel. Corbett v. Manson*, 903 A.2d 69, 74 (Pa. Commw. 2006) (recognizing split among Pennsylvania courts). The Commonwealth Court reasons that "(1) the statute is to be liberally construed to effectuate the legislative goal of consumer protection; (2) the legislature's addition of the words 'or deceptive' signals a less restrictive interpretation; and (3) maintaining the pre-1996 requirement would render the words 'or deceptive conduct' redundant and superfluous, contrary to the rules of statutory construction." *Id.* Other federal courts that have considered the effect of the 1996 amendment have agreed with the conclusion of the Commonwealth Court. *See*, e.g., *Wilson v. Parisi*, 549 F. Supp. 2d 637 (M. D. Pa. 2008); *Alberton v. Commonwealth Land Title Ins. Co.*, 247 F.R.D.

---

[5]    Section 202-2(4)(xxi)  of UTPCPL now prohibits "engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa. Cons.Stat. Ann. § 201-2(4)(xxi) (2007). Prior to 1996, the section addressed only "fraudulent," not "deceptive," conduct.

469 (E.D. Pa. 2008);  *Cohen v.* Chicago Title Ins. Co.,  242 F.R.D. 295 (E.D. Pa. 2007); *Flores*

*v. Shapiro & Kreisman*, 246 F. Supp.2d 427, 432 (E.D. Pa. 2002) (holding that, to survive a

motion to dismiss, plaintiff seeking relief under UTPCPL need allege only that conduct was

deceptive; all six elements of common law fraud are not necessary); *In re Patterson*, 263 B.R.

82, 91-92 (Bankr. E.D. Pa. 2001).  Persuaded by the reasoning of the Commonwealth Court and

these federal courts, this Court also concludes that the addition of "deceptive" conduct to the

UTPCPL signals the legislature's intent that plaintiffs proceeding under the UTPCPL no longer

be required to establish the elements of common law fraud.

Accordingly, because Plaintiffs have pled deception and do not need to plead

common law fraud elements in their UPTCPL claim, the motion to dismiss Count VI of the

Amended Complaint will be denied.


**V.**     ***Claims Brought Pursuant to the federal Truth in Lending Act ("TILA") and the Consumer Credit Protection Act ("CCPA") (Count VII)***

WaMu argues that Plaintiffs have not pled viable claims under either the TILA or the

CCPA because they have failed to allege that (i) Plaintiffs properly reported the unauthorized

charges to WaMU and/or (ii) that WaMu reported Plaintiff Josephine Grimm's WaMu account

as delinquent to a credit reporting agency or that a delinquency appeared on any of their credit

reports.

Plaintiffs, without elaboration, simply respond that they have pled facts sufficient to

establish a claim under the CCPA and despite the clear language of the TILA and CCPA,

WaMu has failed to reimburse the Plaintiffs for the fraudulent transactions.

Under the pleading standard set forth in Federal Rule of Civil Procedure Rule 8(a)(2), complaints must include a "short and plain statement of the claim showing that the pleader is entitled to relief." A plaintiff is required only to give a defendant fair notice of what the claim is and the grounds upon which it rests. Rule 8 is fashioned in the interest of fair and reasonable notice, not technicality, and therefore is "not meant to impose a great burden upon a plaintiff." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). Moreover, it must be noted that the incorporation of preceding paragraphs into subsequent causes of action is a standard practice, specifically permitted by Rule 10(c) of the Federal Rules of Civil Procedure.

To be sure, the allegations in Count VII are not particularly specific. However, given the low pleading standard of Rule 8(a), the Court finds and rules that the Amended Complaint sufficiently puts WaMu on notice of the claim(s) against it.

It may well be that discovery will reveal that Plaintiffs failed to provide WaMu with the requisite notice of the fraudulent transactions and/or that WaMu did not report Josephine Grimm's WaMu account as delinquent to a credit reporting agency or that a delinquency never appeared on any of the Grimms' credit reports. However, until such time, the Court finds that Plaintiffs may maintain their claims under TILA and CCPA. Accordingly, the request of WaMu to have Count VII of the Amended Complaint dismissed will be denied.

## CONCLUSION

For the reasons hereinabove discussed, the Motion to Dismiss will be granted in part and denied in part. An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSEPHINE GRIMM and )
LESTER GRIMM, )
                        )
       Plaintiffs, )
                        )
        v. )     02: 08cv0828
                        )
WASHINGTON MUTUAL BANK, )
                        )
       Defendant. )

## ORDER OF COURT

AND NOW, this 22nd day of July, 2008, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** that the

Motion to Dismiss filed by Defendant Washington Mutual Bank is **GRANTED IN PART**

**AND DENIED IN PART**, as follows:

     (i)     Counts II, III, IV, and VIII of Plaintiff's Amended Complaint are dismissed

pursuant to the gist of the action doctrine;

     (ii)     Count V of Plaintiffs' Amended Complaint is dismissed for failure to state a

cause action; and

     (iii)     The remainder of the motion to dismiss is denied.

It is further **ORDERED** that Defendant shall file an Answer to Counts I, VI, and VII of the Amended Complaint on or before **August 5, 2008.**

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:       Justin R. Lewis, Esquire
          The Cook Law Group, LLC
          Email: jlewis@thecooklawgroup.com

          Danielle M. Vugrinovich, Esquire
          Marshall, Dennehey, Warner, Coleman & Goggin
          Email: dmvugrinovich@mdwcg.com